IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–01320–PAB–KMT

OLIVIA BALLAGE,

      Plaintiff,

v.

HOPE & HOME,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

      This matter is before the Court on "Defendant's Partial Motion to Dismiss." (["Motion"], Doc. No. 20.) Plaintiff has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 22; ["Reply"], Doc. No. 23.) The Motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. No. 21.). The Court has reviewed the briefs, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion (Doc. No. 20) be **GRANTED, in part,** and **DENIED, in part**.

### STATEMENT OF THE CASE

      Plaintiff Olivia Ballage ["Ms. Ballage," or "Plaintiff"], a *pro se* litigant, brings this lawsuit against her former employer, Defendant Hope & Home ["Hope & Home," or

"Defendant"], asserting violations of the Americans with Disabilities Act ["ADA"], 42 U.S.C. §§ 12101, *et eq.*, and Title VII of the Civil Rights Act of 1964, as amended ["Title VII"], 42 U.S.C. §§ 2000(e) *et seq.*.  (Doc. No. 1.)  Ms. Ballage alleges that she is an African American woman with a hip disability.  (*Id.* at 3.)  She alleges that she worked for Hope & Home in an unspecified capacity for approximately four years, from 2015, until July 12, 2019.  (*Id.*)  Ms. Ballage claims that, even though she consistently performed her job at a "satisfactory" level "or better," Hope & Home, "acting by or through its employees," repeatedly "discriminated" against her and "other" workplace colleagues based on their sex and race, including by subjecting them to a hostile work environment.  (*Id.* at 3-5.)  In addition, Plaintiff alleges that she was subject to "retaliation based on sex" and "retaliation based on race."  (*Id.* at 3-4.)  Plaintiff further alleges that, during her employment, Defendant failed to reasonably accommodate her disability, and then later retaliated against her for requesting an accommodation.  (*Id.* at 5-7.)  Ms. Ballage claims to have been constructively discharged by Hope & Home, on July 12, 2019, due to her disability, race, and sex, after "finding out" that her supervisor "was sexually pursuing another female employee."  (*Id.* at 3-4.)

According to the Complaint, following these events, Ms. Ballage filed a charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"], alleging unlawful workplace conduct by her former employer.  (*Id.* at 7, 10-11.)  After receiving notice of her right to sue from the EEOC, on May 13, 2021, Plaintiff commenced this federal employment discrimination lawsuit against Defendant, asserting a bevy of claims under Title VII and the ADA.  (*Id.* at 2-7, 9.)  As relief, Plaintiff demands "[p]re and post judgement [sic] economic

damages, interest, punitive damages, lost pay, benefits and front pay, compensatory damages, [and] costs." (*Id.* at 7.)

On October 20, 2021, Defendant filed the present Motion, asking to partially dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 20.) Specifically, Defendant moves to dismiss Plaintiff's Title VII claims, on the grounds that they are inadequately pleaded. (*Id.*) The Motion is fully briefed and ripe for resolution. (Doc. Nos. 22-23.)

**STANDARDS OF REVIEW**

**I. *Pro Se* Plaintiff**

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] h[er] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the

3

plaintiff in the absence of any discussion of those issues"). Ms. Ballage's *pro se* status does not entitle her to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if

they plausibly suggest an entitlement to relief." *Id*. at 681.  If the allegations state a plausible

claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

That being said, the court need not accept conclusory allegations without supporting

factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.  Moreover,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Id*. (citation omitted).  "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court typically may not look beyond

the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "If, on a motion

under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the

court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v.*

*Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)) (alterations omitted).

"Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, however, include attachments to

the complaint, documents incorporated into the complaint by reference, and information subject

to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v.*

*Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th

Cir. 2006).  Documents attached to a motion to dismiss are considered part of the pleadings, if

they are referred to in the complaint, central to the plaintiff's claims, and not challenged as inauthentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

## ANALYSIS

### I. The Title VII Claims

#### A. Relevant Background Law

Under Title VII, it is unlawful for an employer to discriminate against an employee because of that employee's "race, color, religion, sex, or national origin." U.S.C. § 2000(e)-2(a). "Under Title VII, a plaintiff can prove discrimination in several different ways, including proof of a hostile work environment or disparate treatment." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). In addition, pursuant to 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]."

Title VII claims can be established through either direct or circumstantial evidence. *See, e.g.*, *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (discrimination); *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008) (retaliation). Direct evidence demonstrates on its face that the employer's action was discriminatory or retaliatory. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Circumstantial evidence, by contrast, permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination or retaliation that discrimination or retaliation has, in fact, occurred. *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004).

6

Here, the Complaint is devoid of any allegations reasonably suggesting direct evidence of discrimination or retaliation. As such, Ms. Ballage's Title VII claims are analyzed under the *McDonnell Douglas* burden-shifting framework.[1] *Singh v. Cordle*, 936 F.3d 1022, 1037, 1042 (10th Cir. 2019). Under this framework, the plaintiff has the initial burden of making a *prima facie* case. *Id.* at 1037 (citing *DePaula*, 859 F.3d at 969-70). If she does so, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012)). Once such a showing has been made, the burden shifts back to the plaintiff to prove that the employer's proffered reason is a pretext. *Id.* (quoting *Daniels*, 701 F.3d at 627).

### B. The Title VII Discrimination Claims

In the Complaint, Plaintiff alleges that she was unlawfully discriminated against by Defendant, based on her sex and race. Specifically, Plaintiff alleges that Defendant "discriminated against me and other female employees" in the following ways: (1) by "withholding paychecks from me after I returned from maternity leave while others on maternity leave did not get paychecks withheld from them[;]" (2) by "staring at our breasts while talking to us[;]" (3) by "looking us up and down in a sexual manner[;]" (4) by "making physical comments about our physical appearance (speaking about our looks at events as well as wanting us to look a certain way)[;]" and (5) by "destructively [sic] discharging me on July 12, 2019 after finding out that Ross Wright was sexually pursuing another female employee JS (my moral compass was

---

[1] This framework does not apply to Title VII hostile work environment claims. *McQueen v. Northrup Grumman Sys. Corp.*, No. 19-2743-KHV, 2021 WL 3164855, at *7 n.16 (D. Kan. July 27, 2021) (collecting cases); *see, e.g.*, *Jackson v. Kan. City Kan. Pub. Schs. Unified Sch. Dist. No. 500*, 799 F. App'x 586, 590-92 (10th Cir. 2020) (analyzing a Title VII retaliation claim, but not a Title VII hostile work environment claim, under the *McDonnell Douglas* burden-shifting framework).

off along with finally pinpointing some of my uncomfortability [sic] around Ross)." (Doc. No. 1 at 3-4.) Plaintiff likewise alleges that Defendant "discriminated against me and similarly-situated African-American employees based on our race" by: (1) "failing to hire a qualified candidate (with masters degree) of color, Jasmine[,] over a less-qualified white candidate, Sylvia;" (2) "demanding that we terminate a person of color because he wore his hair in dreadlocks, despite his excellent performance[;]" (3) "terminating the employee who refused to fire that person of color;" (4) "claiming that I would 'play that card' in reference to my race when I asked to work from home while on maternity leave[;]" and (5) "constructively discharging me on July 12, 2019." (*Id.* at 4-5.) The Court liberally construes these allegations as asserting claims of disparate treatment, as well as a hostile work environment.

To establish a *prima facie* case of disparate treatment discrimination under Title VII, a plaintiff must show: (1) membership in a class protected by Title VII; (2) an adverse employment action; and (3) that the adverse employment action "occurred under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007); *see Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (stating that the precise elements required to establish a *prima facie* case "may vary depending on the nature of the claim," but stressing that "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination"). "At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (alteration and citation omitted). To survive

a motion to dismiss, "[a] complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (quoting *Khalik v. United Airlines*, 671 F.3d 1188, 1193 (10th Cir. 2012)) (alteration omitted); *see also Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (Although the complaint "need not set forth a prima facie case of discrimination[,] . . . [it] must allege facts that make such a claim at least plausible.").

A plaintiff may also establish a violation of the substantive provisions of Title VII by proving that discrimination based on sex or race has created a hostile or abusive working environment. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). Unlike a disparate treatment claim, where the claim "is based on a discrete act," a hostile work environment claim "is composed of a series of separate acts that collectively constitute one unlawful employment action." *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018) (citations and internal quotation marks omitted). To state a hostile work environment claim under Title VII, Ms. Ballage must allege that: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [race or sex]; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of [her] employment and created an abusive working environment." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)) (alteration omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 n.10 (2002) ("Hostile work environment claims based on racial harassment are viewed under

the same standard as those based on sexual harassment.").  In evaluating a hostile work environment claim, the Court examines "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Morgan*, 536 U.S. at 116 (citation and internal quotation marks omitted).  To survive a motion to dismiss, Plaintiff "must allege facts that make [her hostile work environment] claim at least plausible."  *Morman*, 632 F. App'x at 933.

### 1.  Allegations Concerning Other Employees

As a preliminary matter, Defendant moves to dismiss Plaintiff's Title VII discrimination claims, in part, to the extent that she asserts them on behalf of other employees.  (Doc. No. 20 at 4-5.)  However, Plaintiff, in her Response, makes clear that she "is not suing on behalf of other people."  (Doc. No. 22 at 1.)  Plaintiff clarifies that her allegations concerning other employees are, instead, meant to show that workplace "sexual harassment and racial discrimination" was not only "pervasive," but also "permitted" by Defendant.  (*Id.*)  In other words, Plaintiff relies on the allegations concerning other individuals employed by Defendant as support for her Title VII claims alleging a racially and/or sexually hostile work environment.

It is well-settled that an individual Title VII plaintiff may not rely on evidence of an employer's "pattern of discriminatory decisionmaking," *i.e.,* a "pattern-or-practice method of proof," to prove disparate treatment.  *Daniels*, 701 F.3d at 633 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001)).  "Proving an employer had such a policy does not prove individual employment decisions were discriminatory, although such evidence might be relevant to individual claims under the *McDonnell Douglas* framework."  *Id.*; *see, e.g.,*

*Jones v. UPS, Inc.*, 502 F.3d 1176, 1188 (10th Cir. 2007) (noting that evidence of an employer's "systematic discrimination against a protected class" may be relevant to establishing the employer's pretextual motivation); *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) (stating that "[p]attern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework"). Moreover, "incidents involving employees other than the plaintiff are relevant in establishing a generally hostile work environment." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987). Therefore, the Court will consider Plaintiff's allegations concerning other employees in evaluating the sufficiency of her Title VII hostile work environment claims. To the extent Plaintiff asserts Title VII disparate treatment claims on behalf of individuals other than herself, those claims should be dismissed with prejudice. *See Hernandez v. Unarco Indus.*, No. CIV-15-001-KEW, 2017 WL 318820, at *2 (E.D. Okla. Jan. 23, 2017) (dismissing disparate treatment claim to the extent asserted on behalf of other similarly situated employees).

### 2. Disparate Treatment

The Court liberally construes the Complaint as asserting claims of disparate treatment under Title VII. Specifically, Ms. Ballage alleges, first, that Hope & Home discriminated against her because of her sex, by withholding her paychecks after she returned from maternity leave "while others on maternity leave did not get paychecks withheld from them." (Doc. No. 1 at 3.) The Court construes these allegations as plausibly suggesting that Ms. Ballage, an African American woman on maternity leave, was treated differently by her employer than similarly situated employees outside of her protected class(es) who also took maternity leave. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210, 226 (2015) (holding that Title VII's prohibition

on sex discrimination applies to discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions") (quoting 42 U.S.C. § 2000e(k)); *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1045 (10th Cir. 2020) ("Title VII also prohibits discrimination based on a combination of protected characteristics, such as 'sex-plus-race' discrimination, i.e., discrimination targeted only at employees of a particular race and sex."); *see also Orr*, 417 F.3d at 1150 (holding that the failure to pay a female employee for the part-time work that she performed while on parental leave constituted an "adverse employment action" for purposes of establishing a disparate treatment claim under Title VII); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n.7 (10th Cir 2000) ("Evidence that pregnant women were treated differently than other temporarily-disabled employees, left unexplained, is sufficient to raise an inference of illegal discrimination at the prima facie stage.").  Plaintiff further alleges that she was constructively discharged by Defendant because of her race and sex, notwithstanding the fact that her work performance was consistently "satisfactory or better." (Doc. No. 1 at 3-5.)  In other words, Plaintiff alleges claims for disparate treatment constructive discharge, based on sex and race, or some combination thereof.  *See Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1324-25 (10th Cir. 2004) (observing that a plaintiff may establish a *prima facie* case of disparate treatment constructive discharge under Title VII by showing: (1) "that she is a member of the class protected by the statute;" (2) "that she was qualified for her job;" (3) "that despite her qualifications, she was discharged;" and (4) "the job was not eliminated after her discharge"); *see also Unruh v. State of Colo. Dep't of Corrs.*, No. 08-cv-00077-CMA-CBS, 2009 WL 1796300, at *6 n.2 (D. Colo. June 23, 2009) ("A constructive discharge claim can be

analyzed as part of a hostile work environment claim or as part of the burden-shifting paradigm used to evaluate discrete instances of disparate treatment.").

In the present Motion, Defendant addresses Plaintiff's allegations concerning the withholding of her paychecks and constructive discharge, only in the context of challenging the sufficiency of her hostile work environment claims. (*See* Doc. No. 20 at 5-9.) Defendant does not address Plaintiff's disparate treatment claims, at all.[2] Accordingly, the Court finds that those claims should proceed.

### 3. Sexually Hostile Work Environment

The Complaint alleges that Ms. Ballage was subject to a sexually hostile work environment. (Doc. No. 1 at 3.) As already touched upon, "Title VII's prohibition of employment discrimination based on sex encompasses hostile work environment sexual harassment." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). "To establish that a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an

---

[2] In its Reply, Defendant raises certain arguments that are pertinent to the sufficiency of Plaintiff's disparate treatment claims. Specifically, Defendant argues that the Complaint fails to plausibly allege that Plaintiff's paychecks "were withheld *because* she took maternity leave[.]" (Doc. No. 23 at 2.) Defendant likewise argues that Plaintiff fails to "identify any white employee who was allegedly treated better than her," or "set forth any facts connecting her race" to an adverse employment decision. (*Id.* at 6.) Because Defendant failed to raise these arguments in the Motion itself, the Court declines to address them. *See In re Motor Fuel Temperature Sales Practice Litig.*, 872 F.3d 1094, 1113 n.5 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived."); *see also Hicks v. Anderson*, No. 11-cv-00422-WJM-KMT, 2012 WL 1415338, at *14 (D. Colo. Jan. 23, 2012) (declining to address an argument raised for the first time in a reply brief, given that the *pro se* plaintiff had no opportunity to respond to it).

abusive working environment." *Harsco*, 475 F.3d at 1186 (alterations, citation, and quotation marks omitted).

Here, Plaintiff alleges the following incidents to support her sexually hostile work environment claim: (1) that her employer withheld her paychecks after she returned from maternity leave; (2) that a male supervisor stared at Plaintiff's and other female employees' breasts while talking to them, looked them "up and down in a sexual manner," and made "inappropriate comments" regarding their physical appearances; and (3) that Plaintiff was eventually "destructively discharg[ed]" after learning that that same male supervisor "was sexually pursuing another female employee." (Doc. No. 1 at 3-4.)

In the present Motion, Defendant argues that these alleged incidents are not sufficiently severe or pervasive to support a Title VII hostile work environment claim, as a matter of law. (Doc. No. 20 at 5-7.) Defendant likewise argues that the allegations fail to establish the much "graver" claim of hostile work environment based constructive discharge. (*Id.* at 7-8.) Notably, Defendant supports these arguments by citing exclusively to cases which were decided on motions for summary judgment. (*See id.* at 6-7 (citing *Ballou v. Univ. of Kan. Med. Ctr.*, 871 F. Supp. 1384 (D. Kan. 1994); *Oliver v. Peter Kiewet & Sons/Guernsey Stone*, 106 F. App'x 672 (10th Cir. 2004); *Schofield v. Maverick Country Store*, 26 F. Supp. 3d 1147 (D. Utah 2014); *Block v. Kwal-Howells, Inc.*, 92 F. App'x 657 (10th Cir. 2004); *Hill v. Phillips 66 Co.*, No. 14-CV-102-JED-FHM, 2016 WL 3910272 (N.D. Okla. July 13, 2016).)

At the summary judgment stage, a court analyzes a Title VII plaintiff's hostile work environment claim on a full factual record to determine whether a rational factfinder could conclude that the alleged harassment was so severe or pervasive, such that the workplace was

"permeated with discriminatory intimidation, ridicule, and insult." *Payan*, 905 F.3d at 1171; *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  On a Rule 12(b)(6) motion to dismiss, by contrast, the Title VII plaintiff must merely allege enough facts—taken as true—to support a plausible inference of severe or pervasive harassment. *Morman*, 632 F. App'x at 933; *see Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (discussing the *Iqbal/Twombly* plausibility standard).  Moreover, the Tenth Circuit has cautioned that, given the fact-intensive nature of the inquiry, "[t]he severity and pervasiveness evaluation is particularly unsuited [even] for summary judgment." *Desla Brooke Sanderson v. Wyom. Hwy. Patrol*, 976 F.3d 1164, 1177 (10th Cir. 2020) (citation omitted); *see PVNF*, 487 F.3d at 798 ("[S]ummary judgment should seldom be used in employment discrimination cases.").

Here, viewing the Complaint's allegations in their totality, and liberally construing them in Plaintiff's favor, the Court finds that Plaintiff has alleged sufficient facts to support a finding or inference of either severe or pervasive sexual harassment.  Specifically, Plaintiff alleges multiple incidents of gender-specific, sexually charged conduct involving the same male supervisor, which made Plaintiff uncomfortable, and of which Defendant's "upper management" was "thoroughly aware." *See Doe v. Hutchinson*, 728 F. App'x 829, 833-34 (10th Cir. 2018) (finding allegations plausibly suggested a pervasively hostile work environment, where the complaint alleged multiple instances of sexually explicit, gender-based comments made by a male teacher to the plaintiff and to other female students); *c.f. Earles v. Cleveland*, 418 F. Supp. 3d 879, 900 (W.D. Okla. 2019) (finding allegations—that a male supervisor forced the female

plaintiff to carry her own luggage from her room to the hotel lobby, told the plaintiff that she "was incompetent and worthless" and lacked good work ethic, and wrongfully blamed her for his own mistake—insufficient to state a plausible claim for sexual harassment).  Plaintiff has alleged plausible facts that indicate the allegedly inappropriate conduct occurred over a period of time, as opposed to a single discrete instance.  *See Mitchem v. Sleepcair, Inc.*, No. 20-2627-DDC-GEB, 2021 WL 4439406, at *6-7 (D. Kan. Sept. 28, 2021) (finding allegations sufficient to support a plausible finding or inference of pervasive harassment, where the plaintiff "alleged more than an isolated incident of harassment").  While discovery may prove otherwise, at this stage of the proceedings, Plaintiff has shouldered her burden to allege a plausible claim of a sexually hostile work environment.  Therefore, Defendant's motion to dismiss this claim should be denied.

The Court also finds that Plaintiff has adequately alleged a claim for constructive discharge resulting from a sexually hostile work environment.  "[A] hostile-work-environment claim is a 'lesser included component' of the 'graver claim of hostile-environment constructive discharge.'"  *Green v. Brennan*, 578 U.S. 547, 559 (2016) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004)).  Thus, to state a claim for constructive discharge that is premised on a hostile work environment, a Title VII plaintiff "must allege facts sufficient to show both that a hostile work environment existed and that this environment was 'so intolerable that a reasonable person would have felt compelled to resign.'"  *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 523 (10th Cir. 2017) (quoting *Suders*, 542 U.S. at 146-47).

Here, Ms. Ballage alleges that Hope & Home withheld her paychecks on more than one occasion after she returned from maternity leave; that she and other female coworkers were

repeatedly subjected to unwelcome sexual innuendo, leering, and comments by a male

supervisor; that that same male supervisor made sexual advances towards at least one female

coworker; that Ms. Ballage, herself, felt uncomfortable around the male supervisor; and that

Hope & Home was fully aware of the male supervisor's harassing behavior, but failed to take

any action to stop it.  (Doc. No. 1 at 3-4.)  These allegations plausibly suggest workplace sexual

harassment that was so intolerable that a reasonable employee in Plaintiff's position would have

felt compelled to resign.  *See Sheets v. Sonic Indus., LLC,* No. CIV-20-01056-PRW, 2021 WL

3074188, at *2 (W.D. Okla. July 20, 2021) (recognizing that, "[i]ndividually, a few stray

remarks in bad taste" and other conduct "may not be sufficient to allege an objectively

intolerable work environment that would compel the proverbial reasonable employee to quit[,]"

but concluding that, "in conjunction, and with the benefit of liberal inference afforded to

plaintiffs at this early stage [on a motion to dismiss]," the plaintiff's allegations were enough to

"eke the accusation of constructive discharge across the line of plausibility"); *see also*

*Pfannenstiel v. Kansas*, No. 5:21-cv-04006-HLT-ADM, 2022 WL 873674, at *17 & n.19 (D.

Kan. Mar. 24, 2022) (denying the defendant's Rule 12(b)(6) motion to dismiss a constructive

discharge claim premised on a hostile work environment, where the underlying hostile work

environment claim was plausible on its face, and the constructive discharge claim was

"effectively an extension" of the hostile work environment claim).  Therefore, Defendant's

motion to dismiss this claim should also be denied.

### 4.  Racially Hostile Work Environment

The Complaint alleges that Ms. Ballage was subjected to a racially hostile work

environment.  (Doc. No. 1 at 4.)  To establish such a claim, Ms. Ballage must show "that under

the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Chavez*, 397 F.3d at 831-32 (internal quotation marks omitted). "A plaintiff cannot meet this burden by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs." *Id.* at 832 (internal quotation marks omitted). Rather, "there must be a steady barrage of opprobrious racial comments." *Id.*

Here, the allegations supporting Plaintiff's racially hostile work environment claim against her former employer are as follows: (1) that Defendant elected to hire "a less-qualified white candidate" over a more-qualified candidate of color who held a masters degree; (2) that Defendant demanded that a non-white employee be fired, merely for wearing their hair in dreadlocks; (3) that Defendant subsequently fired another employee for refusing to fire the aforementioned non-white employee with dreadlocks; (4) that a supervisor, in response to Plaintiff's request to work from home while on maternity leave, made a racially charged comment that Plaintiff would "play that card;" and (5) that the racial harassment resulted in Plaintiff's constructive discharge. (Doc. No. 1 at 4-5.) Defendant argues that these allegations are insufficient to show pervasive or severe harassment or harassment-based constructive discharge, as a matter of law, characterizing the allegations as "nothing more than a few isolated incidents, most of which were not directed at" Plaintiff. (Doc. No. 20 at 8.)

While a close call, the Court finds that these allegations—though lacking in specific details concerning time, place, and person—are enough to state a plausible claim for relief, particularly given that Plaintiff alleges more than one protected trait. *See Rodriguez v. Brown*, No. 21-1124, 2022 WL 3453401, at *8 & n.8 (10th Cir. Aug. 18, 2022) (considering a Title VII

plaintiff's multiple protected characteristics together in evaluating the viability of her discrimination and harassment claims).  While not replete with factual details, and though mostly concerning incidents involving other employees, the Court finds that Plaintiff's allegations plausibly suggest that Plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult."  *Throupe*, 988 F.3d at 1252 (citation omitted); *see Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 671 (10th Cir. 2014) (finding a Title VII racially hostile work environment claim to be plausibly alleged, where the factual allegations, though "sparse," established that the plaintiff "was regularly subjected to unwelcome harassment by his supervisor based on his race"); *Shoemake v. McCormick, Summers, & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 4915742, at *3 (D. Kan. Oct. 17, 2011) (construing a *pro se* plaintiff's allegations to plausibly allege a Title VII claim for a racially hostile work environment, because even though there were "not a lot of facts alleged in the complaint," the plaintiff did "allege contrived disciplinary action, illegal surveillance, offensive and discriminatory comments, and a hostile environment which lasted for a year and a half"); *see also Martinez v. City & Cnty. of Denver*, No. 08-cv-01503-PAB-MJW, 2010 WL 1380529, at *4 (D. Colo. Mar. 31, 2010) (finding a racially hostile work environment claim to be facially plausible, though lacking in certain contextual details, and noting that the dismissal of such a claim for failure to sufficiently allege pervasiveness or severity "would be an extraordinary action indeed").  Therefore, Defendant's motion to dismiss Plaintiff's racially hostile work environment claim should be denied.

The Court construes Plaintiff's Complaint as also asserting a constructive discharge claim based on the racially hostile work environment allegedly created by Defendant.  To state such a claim, Plaintiff must show that the racial harassment was "so intolerable that a reasonable person

would have felt compelled to resign." *Suders*, 542 U.S. at 146-47.  Here, Plaintiff alleges

multiple instances of racially motivated adverse employment actions taken by Defendant against

other employees, which Plaintiff either witnessed or was aware of during her employment.

Plaintiff also alleges that, when she herself asked to work from home during her maternity leave,

her supervisor responded with an offensive comment pertaining to her race.  Given the liberal

inference afforded to Plaintiff at this early stage of the proceedings, these allegations are just

enough to nudge her claim of constructive discharge over the line of plausibility.  Accordingly,

Defendant's motion to dismiss this claim should be denied.

### C.  The Title VII Retaliation Claims

The Complaint alleges that Ms. Ballage was subjected to "retaliation based on sex" and

"retaliation based on race."  (Doc. No. 1 at 3-4.)  Defendant moves to dismiss these claims,

arguing that Plaintiff has failed to plausibly allege that she engaged in any "protected activity"

within the meaning of Title VII.  (Doc. No. 20 at 2 n.2 & n.5.)

To state a *prima facie* claim for retaliation under Title VII, Ms. Ballage must plausibly

allege: (1) her engagement in activity protected under Title VII; (2) that she suffered a

"materially adverse" employment action; and (3) that there is a causal connection between the

protected activity and the materially adverse employment action.  *Reznik v. inContract, Inc.*, 18

F.4th 1257, 1260 (10th Cir. 2021) (citing *Khalik*, 671 F.3d at 1193).  "The prohibition against

retaliation protects conduct short of filing a formal charge—it prohibits discrimination against an

individual simply for 'oppos[ing] any practice made an unlawful employment practice by Title

VII.'"  *PVNF*, 487 F.3d at 804 (citing 42 U.S.C. § 2000e-3(a)).  "Protected opposition can range

from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am.,*

*Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (citation omitted).

Here, the Complaint is wholly devoid of any allegations from which to infer that Ms.

Ballage engaged in a protected activity under Title VII.  In support of her sex-based

discrimination claims, Ms. Ballage alleges that her employer withheld her paycheck after she

returned from maternity leave, that she and other female employees were subjected to unwanted

sexual harassment by a male supervisor, and that she was constructively discharged "after

finding out that [the male supervisor] was sexually pursuing another female employee."  (Doc.

No. 1 at 3-4.)  Although Ms. Ballage claims that Hope & Home was "thoroughly aware" of at

least some of these incidents, she does not allege that she ever actually complained of, or

otherwise voiced her opposition to, any sex-based discrimination prior to her constructive

termination.  (*Id.*)  Nor does Plaintiff allege that she ever complained of any race-based

discrimination while employed by Defendant.  *See Peterson v. Utah Dep't of Corrs.*, 301 F.3d

1182, 1188 (10th Cir. 2002) ("An employer's action against an employee cannot be *because* of

that employee's protected opposition unless the employer knows the employee has engaged in

protected opposition.").  Absent such allegations, Plaintiff has failed to plausibly allege a claim

for retaliation under Title VII.  Accordingly, Plaintiff's Title VII retaliation claims should be

dismissed without prejudice, under Rule 12(b)(6), for failure to state a claim.  *See Khalik*, 671

F.3d at 1193 (affirming the dismissal of Title VII retaliation claims, where the plaintiff alleged

that she "complained internally about discrimination," but provided no context as to when, or to

whom, those complaints were made).

## II.  The Remaining Claims

Plaintiff alleges ADA claims for disability discrimination, failure to accommodate, and retaliation.  (Doc. No. 1 at 5-6.)  Defendant offers no argument for the dismissal of these claims.  (*See* Doc. No. 20.)  Accordingly, Plaintiff's remaining ADA claims should proceed.

### CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that:

(1) "Defendant's Partial Motion to Dismiss" (Doc. No. 20) be **GRANTED, in part,** and **DENIED, in part**.  Specifically, Plaintiff's Title VII retaliation claims should be dismissed without prejudice, under Rule 12(b)(6), for failure to state a claim.  The Motion should be denied in all other respects.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C.  636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment

of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**DATED**: August 29, 2022.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge